By the Court. Sandford, J.
There is no doubt that the plaintiffs are to be treated as principals in this transaction; and there is nothing in the point that they are bona fide holders of the note for value.
The defendants contend that the sale of this eye water, with counterfeit trade marks, &c., was illegal, and the note given in consideration of the sale, cannot be enforced; and that the sale was illegal, independent of the statute of 1845.
I. As to the statute of 1845, the first section makes it a penal offence to forge or counterfeit trade marks or labels. The second section provides that every person who shall vend any merchan *256 clise, having thereon any forged or counterfeited trade marks or labels, knowing the same to be forged or counterfeited, without disclosing the fact to the purchaser, shall be liable to the same punishment of imprisonment as is specified in the first section, or to a fine, in the discretion of the court.
How we have no doubt that this statute would prevent any one who has committed the offence defined in the second section, from recovering the price of goods thereby sold.
The difficulty in this case is, that the plaintiffs are not proved to have known the stamps and labels on the eye water, to be forged or counterfeited. The evidence on that point is entirely insufficient to warrant any such conclusion.
2. It is true, as the defendants allege, that before the statute, these spurious manufactures were so far unlawful, that courts of equity would restrain by injunction, their preparation and their sale. There is no decision going the length of holding that on a sale of such articles, the seller could not recover the price because he knew the same were spurious. Whether such ought to be the rule of law, is a point foreign to this case.
Here the plaintiffs, in the usual course of trade, sold an invoice of eye water. They made no warranty; nor any representation that was untrue. So far as it appears in proof, the purchaser had as good an opportunity to judge and to ascertain whether it was genuine or spurious, as the sellers had. Surely there is nothing illegal in the transaction. The original fraud or crime in the preparation of these counterfeit trade marks, does not attach itself to the goods in the hands of owners ignorant of the offence, and fasten upon them the penalties of a wrong of which they are innocent.
If the authorities cited to us, in which parties to a sale, fraudulent as against creditors, were precluded from the aid of the courts to enforce contracts, growing out of the sale; had held also, that no subsequent owner of the property fraudulently sold, however ignorant of the wrong, could ever maintain a suit for the price on his own sale to another; they would have furnished a principle decisive of this case. We are asked to go to that extent in the application of the maxim ex twrpi contractu non *257 oribwt' actio; and the simple statement of the proposition, it seems to us, shows that it is utterly inadmissible.
The case of stolen goods is not analogous. Ko title passes on such a sale, however honest or remote from the transgressor.
We were also referred to the receipt of counterfeit bank notes in payment; which does not discharge the party paying them. That also is inapplicable to a sale of goods. The buyer must take care to see and know for himself what he is purchasing. A creditor receiving in payment a forged note or spurious coin, receives nothing, and the debt remains undischarged.
The judgment at the special term must be affirmed.